984 F.2d 97
 VIRGIN ISLANDS JOINT BOARD OF EDUCATION
v.
Alexander A. FARRELLY, in his capacity as Governor of the
Virgin Islands; Linda Creque, in her capacity as
Commissioner of Education; Government
of the Virgin Islands,
Alexander A. Farrelly, in his capacity as Governor of the
Virgin Islands, Appellant.
 No. 92-7209.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 10, 1992.
Decided Jan. 22, 1993.
 
 Rosalie Simmonds Ballentine, Atty. Gen., Roy E. Parrott, Acting Sol. Gen., Robert Bornholt (Argued), Asst. Atty. Gen., Elliott M. Davis, Asst. Atty. Gen., Dept. of Justice, Charlotte Amalie, U.S. Virgin Islands, for appellant.
 Brenda J. Hollar (Argued), Charlotte Amalie, U.S. Virgin Islands, for appellee.
 Before: BECKER, COWEN and ROTH, Circuit Judges.
 OPINION OF THE COURT
 BECKER, Circuit Judge.
 
 
 1
 The Virgin Islands Legislature has granted both the Virgin Islands Board of Education ("Board") and the Virgin Islands Department of Education ("Department") fairly broad powers with respect to the operation of the Virgin Islands public schools. This appeal presents the question whether the Board or the Department has the statutory authority to set the school calendar.
 
 
 2
 The case arises from a tug-of-war between the Board and the Department over the issue that began when the school calendar prepared by the Department and submitted to the Board for approval for the 1990-91 school year contained fewer than the 180 instructional days that the Board believes are mandated by law. The Board disapproved, but the Secretary of Education promulgated the calendar nonetheless, causing the Board considerable ire. The Board thereupon sought declaratory and injunctive relief in the Territorial Court of the Virgin Islands. The Territorial Court concluded that it is the Board that possesses the power to promulgate the school calendar for the Virgin Islands public schools.
 
 
 3
 Although the question is close, we agree with the Territorial Court (and the Appellate Division of the District Court of the Virgin Islands, which affirmed its order) and will affirm. Because of the friction created by the lack of clarity in the legislative scheme, we urge the Virgin Islands legislature to take swift action to rectify it.
 
 I.
 
 4
 On July 26, 1989, the Board informed the Department that it was "reluctantly" approving the 1989-90 school calendar, but that it would not approve any future calendar which contained "less than 180 teaching days." The parties apparently agree that the school calendar should contain 180 teaching days, but disagree as to what constitutes a "teaching day." The Board considers a teaching day to be any day that teachers are actually giving classroom instruction or conducting examinations, whereas the Department interprets a teaching day to be any day that a teacher is required to be at the school, whether engaged in teaching, orientation, scheduling or otherwise.
 
 
 5
 The 1990-91 school calendar was submitted by the Department to the Board for approval but, according to the Board, a review and compilation of the teaching therein disclosed only 178 teaching days for elementary schools and 156 teaching days for secondary schools. The Board rejected the calendar, but the Commissioner of Education circulated it to her superintendents for information and distribution (after it had been approved by the Governor of the Virgin Islands).
 
 
 6
 When negotiation failed to resolve the dispute, the Board instituted an action for declaratory and injunctive relief asking the Territorial Court to require the Department (and the Governor) to retract the school calendar distributed within the Department and to issue a new school calendar that strictly complied with all specifications determined by the Board. After a full hearing on the merits, the Territorial Court filed a memorandum opinion resolving the dispute in favor of the Board. It nonetheless granted prospective relief only, declining to order retraction of the 1990-91 school calendar.
 
 
 7
 The Court noted preliminarily that the heart of the dispute between the parties was the definition of teaching day. The Court then indicated that the Board might eventually precisely define the term teaching day by regulation or specific directive. It also observed that a contract had been negotiated by the Department with the Teachers' Union utilizing the Department's definition, and that it would be inequitable and counterproductive to disturb the Commissioner's interpretation at that point in time (the middle of the 1990-91 school year). The Court was therefore unwilling to require renegotiation of the current contract, and granted only declaratory relief. This timely appeal followed.
 
 
 8
 It is important to note that the Territorial Court's discussion reflects its understanding of the critical role played in this area by the collective bargaining negotiations. Indeed, in one sense the nub of the problem is that, while the Board appears to have the preeminent role in matters of policy affecting the schools, see discussion infra, pages 100-01, the Department has been the only party representing the schools in the bargaining with the Union. Since the contract determines how many days the teachers will (get paid to) teach, there is a tension between one party setting the school calendar, and a different party negotiating the agreement (and not feeling bound by the school calendar). Indeed the Board has sued in Territorial Court seeking declaratory and injunctive relief that would give it a role in these negotiations. See Virgin Islands Joint Boards of Educ. v. Farrelly, Civil No. 1048 (Territ.Ct.1992). The Territorial Court has ruled in favor of the Board. See id. The matter is now on appeal to the appellate division of the District Court.
 
 II.
 A.
 
 9
 The Board is an independent agency whose members are elected on an at-large basis. Under Virgin Islands law the Board has the authority and jurisdiction to:
 
 
 10
 recommend the establishment of public schools; prescribe general regulations and orders; adopt curricula and courses of study; recommend laws and amendments; recommend appropriations required for the operation of the public schools and the Department of Education; and in general to do anything necessary for the proper establishment, maintenance, management, and operation of the public schools of the Virgin Islands.
 
 
 11
 V.I.Stat.Ann. tit. 17, § 21(a)(1) (emphasis added). Although the length of the school year is set by statute, it may be revised at the discretion of the Board, as long as the Governor approves. See V.I.Stat.Ann. tit. 17, § 61 ("The school year shall begin the first Tuesday after the first Monday in September and end the last Friday in June. This term may be changed at the discretion of the Board of Education with the approval of the Governor.").
 
 
 12
 The statutory term "school year" is distinct from "school calendar," a term that, while mentioned in the collective bargaining agreement, is never mentioned in the Virgin Islands code. According to the Territorial Court, "A school calendar involves more than just a determination of which days students must be in actual physical attendance at school. The preparation of a school calendar must take into account, among other things, when marking periods begin and end, as well as dates that must be set aside for examinations, orientation and scheduling coordination."
 
 
 13
 Although the Governor has the authority to set "special holidays," and the legislature has codified other holidays (e.g., Saturdays, Lincoln's Birthday, etc.), Virgin Islands law vests the power to establish Easter holidays and Christmas holidays in the Board. See V.I.Stat.Ann. tit. 17, § 60. In contrast, the legislature has granted the Department no express authority to establish specific school holidays. See id. But cf. V.I.Stat.Ann. tit. 17, § 64 (authorizing the Department, with approval of the Board, to prescribe rules regarding students' excused absences for religious holidays).
 
 
 14
 The legislature has provided that the Department has the following authority and jurisdiction:
 
 
 15
 (a) The Department shall have authority and jurisdiction to exercise general control over the enforcement of the laws relating to education, and shall--
 
 
 16
 (1) promote the cause of education, and achieve a high level of general education throughout the Virgin Islands....
 
 
 17
 (3) except as otherwise may be provided by law, administer and operate all publicly supported educational facilities and programs, including specialized instruction and apprenticeship training;
 
 
 18
 (4) administer and operate all publicly supported educational facilities ....
 
 
 19
 (7) exercise such other powers, and perform such other duties and functions, as may be prescribed by law....
 
 
 20
 V.I.Stat.Ann. tit. 3, § 96(a) (emphasis added).
 
 A.
 
 21
 Although both the Department and the Board are vested with broad powers and authority, the statutory language we have set forth seems to us to grant the Board broader policy-making authority than the Department. More specifically, the language pertaining to the Board, which authorizes it "in general to do anything necessary for the proper establishment, maintenance, management, and operation of the public schools of the Virgin Islands," V.I.Stat.Ann. tit. 17, § 21(a)(1), appears broader than the Department's authority to "administer and operate all publicly supported educational facilities" and to "exercise general control over the enforcement of the laws relating to education." V.I.Stat.Ann. tit. 3, § 96.
 
 
 22
 Moreover, the legislature has accorded the Board some power to set various school holidays, in contrast to the Department, which only has the express authority to establish rules with respect to religious absences, and even then must seek the Board's approval for the rules. See V.I.Stat.Ann. tit. 17, § 64.
 
 
 23
 Additionally, the legislation appears to place more policy-making authority with the Board than with the Department. The relevant statute states that the Board has the power to "recommend the establishment of public schools; prescribe general regulations and orders; adopt curricula and courses of study; recommend laws and amendments; recommend appropriations required for the operation of the public schools and the Department of Education" along with its general grant of power to "do anything necessary." V.I.Code Ann. tit. 17, § 21(a)(1). In contrast, the Department is given the power to "operate and administer" the school system and to enforce the educational laws. See V.I.Stat.Ann. tit. 3, § 96(a). We note too that the Department's authority exists "except as otherwise provided by law," a limitation not imposed on the Board.
 
 
 24
 Although both bodies are involved in the creation of educational policy, we believe that the Board has broader policy-making power not only because of the relevant statutory language, but also because the Board is an elected body whereas the Department of Education serves in an administrative capacity as an arm of the executive branch. Put differently, as a directly elected body, the Board is more accountable than the Department which, though an agency of the elected Governor, is not subject to popular election. Finally, the establishment of the school calendar seems to be such an integral component of educational policy that it would appear to be properly the province of the Board and not the Department. For all of these reasons, we conclude that the Territorial Court was correct and that the setting of the school calendar is the province of the Board.
 
 B.
 
 25
 We have noted that, at this juncture, it is the Department alone, and not the Board, that engages in collective bargaining with the teachers' union, see supra page 99. From a practical standpoint, it would seem preferable for the entity that must bargain with the unions also to set the school calendar, since the number of hours and days of work is obviously a bargaining issue.[1] Of course, even if one body does the bargaining and the other sets the school calendar, the bargaining process with the teachers' union would not be stymied as long as there is coordination between the Board and the Department, i.e. if the Department bargains with the Union on the basis of the calendar set by the Board.[2]
 
 
 26
 Despite the potential obstacle to the bargaining process with the teachers' union, as these observations about the statutory language and policy implications suggest, we conclude that the Board bears the responsibility for formulating the school calendar. However, we readily acknowledge that we are not--and ought not to be--the last word on the subject. At stake is an important issue of educational policy. Unfortunately, the friction between the Board and the Department has been spawned by the lack of a clear legislative mandate, which even our decision may not cure. The Board contends that the school children are being shortchanged, a charge the Department vehemently denies. At all events, the parties concede that it is unsatisfactory to have two different bodies decreeing a different number of school days, and that a legislative solution is in order.
 
 
 27
 We hope that one will be forthcoming. Counsel have represented that they have asked the Education Committee of the Legislature for clarifying action. To facilitate matters, the Clerk is directed to forward a copy of this opinion to the President of the Legislature.
 
 
 28
 The order of the district court will be affirmed.
 
 
 
 [1]
 Counsel for the Board has represented that the "Virgin Islands is [virtually] the only jurisdiction under the American flag" in which the School Board does not set the school calendar. See Supp. Materials filed with this court by Board of Education
 
 
 [2]
 As the Territorial Court suggested, the Board might also enact formal rules defining the "school calendar" and the "teaching day."